ROBERTSON, REVENUE AGENT, *v.* TEXAS OIL CO.*

[106 So. 449.   No. 25231.]

(Division B. Dec. 14, 1925.   Suggestion of Error Overruled Jan. 11,
1926.)

1. STATUTES. *Court to ascertain intent, where meaning not plain,
or letter leads to absurdity or injustice.*

   It is the duty of the court to ascertain the real purpose and intent
   of a statute, where its meaning is not plain, or the letter leads
   to an absurdity or injustice.

2. STATUTES. *If language ambiguous, intent to be gathered from all
provisions and history.*

   Intent of statute is to be ascertained from its language, if its mean-
   ing is made clear and unmistakable thereby; but, if its language
   is capable of more than one meaning, its purpose and spirit, as
   gathered from all its provisions and its history, must be as-
   certained and declared by the court.

3. LICENSES. *All tanks and buildings at one place "oil depot" subject
to single tax.*

   Under Code 1906, section 3843 (Hemingway's Code, section 6555),
   being Laws 1904, chapter 76, section 64, providing a privilege
   tax: "Oil Depot.   On each oil depot . . fifty dollars," as
   amended in 1906 (Laws 1906, chapter 114) by adding "each
   building or tank where oil is stored for delivery shall be deemed
   a depot," each distributing station is subject to a single tax, ir-
   respective of number of tanks or buildings there.

4. STATUTES. *Contemporaneous construction by departments of state
and officers aid to court.*

   Contemporaneous construction for nearly a generation by the
   different departments of state and the officers of a taxing statute,
   while not controlling, will be deemed valuable in aiding the court
   in determining its real meaning and purpose.

*Headnotes 1.  Statutes, 36 Cyc., pp. 1107, 1108, 1110; 2. Statutes, 36 ·
Cyc., pp. 1107, 1128, 1138; 3. Licenses, 37 C. J., Section 66; 4. Statutes,
36 Cyc., pp. 1140, 1141; Construction of Statutes, see 25 R. C. L. 1012
et seq.; 3 R. C. L. Supp. 1438; 4 R. C. L. Supp. 1616; 5 R. C. L. Supp.
1360.

APPEAL from circuit court of Hinds county.

HON. W. H. POTTER, Judge.

Action by Stokes V. Robertson, revenue agent, by Rush H. Knox, Attorney-General, against the Texas Oil Company. Judgment for defendant, and plaintiff appeals. Affirmed.

*NOTE. *Brief for appellant missing from the record.*

*Watkins, Watkins & Eager, W. O. Crain,* and *Robert A. Johns,* for appellee.

I. *Construction of the statute.* A. *Every doubt should be resolved in favor of the taxpayer. Ex parte Taylor,* 58 Miss. 478; *Y. & M. V. R. R. Co.* v. *State,* 62 Miss. 105; *American Net & Twine Co.* v. *Worthington,* 141 U. S. 468, 35 L. Ed. 821; *Hartrauft* v. *Weigman,* 121 U. S. 609, 30 L. Ed. 1012; *United States* v. *Isham,* 84 U. S. 17 L. Ed. 728; *Bluff City Ry. Co.* v. *Clarke, Sheriff,* 49 So. 177, 95 Miss. 191; *State* v. *Grenada Cotton Compress Co.,* 85 So. 137; 123 Miss. 191; *Sperry Hutchinson* v. *Harbinson, Sheriff,* 123 Miss. 674.

B. *A construction which would lead to an absurdity should be avoided. Kennington* v. *Hemmingway,* 101 Miss. 259, 57 So. 809.

C. *The statute should be so construed as to avoid injustice. Dunn* v. *Clingham,* 47 So. 503, 93 Miss. 310; *Eskridge* v. *Magruder,* 45 Miss. 294; *Bond* v. *Greer,* 56 Miss. 710; *Leachman* v. *Musgrove,* 45 Miss. 511; *Shelton* v. *Baldwin,* 25 Miss. 439; *McLemore* v. *State,* 33 So. 225;

D. *A statute should be construed in accordance with its purpose and spirit. Wray* v. *Kelly,* 98 Miss. 172; *Gunter* v. *City of Jackson,* 94 So. 844, 130 Miss. 637; *Bonds* v. *Greer,* 56 Miss. 710; *Adams, State Revenue Agent,* v. *Y. & M. V. R. R. Co.,* 75 Miss. 275; *State Board of Education* v. *Mobile & Ohio R. R. Co.,* 72 Miss. 236; *Clay* v. *City,* 134 Miss. 658; *Austin* v. *Austin,* 136 Miss. 61; *Ladnier* v. *Ingram-Day Lbr. Co.,* 135 Miss. 632; *Roseberry* v. *Norsworthy, Sheriff,* 135 Miss. 845; *Hamner* v. *Yazoo-Delta Lbr. Co.,* 56 So. 466, 100 Miss. 349.

E. *The act has been the subject of judicial construction.* State v. Pons, 107 Miss. 612.

F. *Re-enactment of the statute after the decision in the Pons case.* Shotwell v. Covington, 69 Miss. 735, 12 So. 260; Wetherbee v. Roots, 72 Miss. 355, 16 So. 902; Davis v. Holberg, 59 Miss. 362; White v. I. C. R. R. Co., 99 Miss. 651, 55 So. 593; Hamner v. Yazoo-Dalta Lbr. Co., 100 Miss. 349, 56 So. 466; Henry v. Henderson, 103 Miss. 48, 60 So. 33; Womack v. Central Lbr. Co., 94 So. 2, 131 Miss. 201.

G. *Departmental construction.*

II. *The statute under review, if subject to the construction sought to be placed thereon by appellant, violates section 112 Mississippi Constitution; Sec. 14 of the Bill of Rights of Mississippi, as well as the Fourteenth Amendment to the United States Constitution, by reason of the fact that the classification as tank or building has no reference to the capacity of the tank, the size of the municipality, the amount invested in the business or volume thereof, and is, therefore, an unreasonable classification, and void.* Daily v. Swope, 47 Miss. 367; Insurance Agency v. Cole, 87 Miss. 646; Wirt Adams, Revenue Agent, v. Standard Oil Co., 53 So. 692, 97 Miss. 879; Chicago, St. Louis & N. O. R. R. Co. v. Moss, 60 Miss. 641; Gulf & Ship Island R. Co. v. Adams, 90 Miss. 559; City of Vicksburg v. Mullens, 106 Miss. 217; Sorenson v. Webb, 71 So. 273, 111 Miss. 87; Wirt Adams, Revenue Agent, v. Mississippi Lbr. Co., 84 Miss. 23; Wirt Adams v. Kuykendall, 83 Miss. 571; Hyland, Sheriff, v. Sharp, 41 So. 264, 88 Miss. 567; Airway Electric Appliance Corp. v. Day, 69 L. Ed. 10; Royster Guano Co. v. Virginia, 253 U. S. 412, 64 L. Ed. 989; Gulf, Colorado & Santa Fe R. R. Co. v. W. H. Ellis, 165 U. S. 150, 41 L. Ed. 666; Yick Wo v. Hopkins, 118 U. S. 356, 30 L. Ed. 220; Charles U. Cotting v. Goddard, Attorney-General, 183 U. S. 79, 46 L. Ed. 92; Osborne v. State of Florida,

164 U. S. 650, 41 Ed. 586; *Swain* v. *Brister*, 87 Miss. 516; *State* v. *L. & N. R. R. Co.*, 53 So. 454; *Lewis* v. *City of Savannah*, 107 S. E. 588; *State* v. *Railroad Co.*, 57 So. 918.

III. *A privilege tax imposed on appellee's warehouses would be a tax on interstate commerce, and void.* *Welton* v. *Missouri*, 91 U. S. 275, 23 L. Ed. 347.; *Pittsburg & Southern Coal Co.* v. *Bates*, 156 U. S. 577, 39 L. Ed. 538; *American Steel & Wire Co.* v. *Speed*, 192 U. S. 500, 48 L. Ed. 538; *General Oil Co.* v. *Crain*, 209 U. S. 211, 52 L. Ed. 754; *Standard Oil Co.* v. *Graves*, 249 U. S. 389, 63 L. Ed. 662; *Harry S. Bowman* v. *Continental Oil Co.*, 256 U. S. 642, 65 L. Ed. 1139; *Sonneborn* v. *Keeling*, 262 U. S. 506, 67 L. Ed. 1095.

IV. *The legislature has dealt with gasoline and oil as being separate and distinct things.* *Henry, Insurance Commissioner,* v. *State*, 95 So. 67.

*Implied Repeal. Plummer* v. *Plummer*, 37 Miss. 185; *Swann* v. *Buck*, 40 Miss. 268; *Ex Parte McDaniel*, 8 So. 645; *Gibbons* v. *Britton*, 56 Miss. 232.

V. *When the appellee came into the state, according to the executive construction, it was required to pay a tax of fifty dollars on each unit of depot as a plant. To change the construction to a disadvantage, and impose liability not only for the tax but for the penalties would violate the Fourteenth Amendment to the United States Constitution.* *Southwestern Tel. & Tel. Co.* v. *Danaher*, 238 U. S. 282, 59 L. Ed. 1419; *R. R. Co.* v. *Nye*, 260 U. S. 35.; 67 L. Ed. 115.

*Rush Knox,* Attorney-General, in reply, for the state.

*Construction of the statute.* We have no quarrel with the authorities cited by counsel for appellees, in which it is held that "laws imposing privilege taxes are to be liberally construed in favor of citizens, and courts will

not extend the statute imposing such taxes beyond the clear meaning of the language employed.''

The state in this case is not asking this court to extend the statute beyond the clear meaning of the language employed by the legislature and code commissioners in presenting to the legislature for its adoption the Code of 1906, but simply to enforce the law as it is written. Nor do we quarrel with the authorities, so copiously cited by appellees in their briefs, but we contend that these authorities have no application in this case and shed no light whatever on the question herein involved, where, as we contend, the language of the statute is so clear and unmistakable that it leaves no room for argument as to its meaning.

Nor do we quarrel with the authorities cited by appellees, which hold that in construing an ambiguous statute of doubtful meaning, the courts may, although they are not bound so to do, resort to departmental or contemporaneous construction. But this rule, like all other canons of construction, must fall in the face of the plain meaning of the statute as expressed by the language itself.

At the time the Code of 1906 was presented to the legislature by the Commissioners, Judge A. H. Whitfield, Judge William H. Hardy, and Gen. T. C. Catchings, the question as to whether or not one of these large separate tanks was or was not an oil depot had already been determined by the supreme court of Kentucky in *Standard Oil Co.* v. *Commonwealth, supra,* cited by appellee. And if we lay the statute under consideration alongside the opinion of the supreme court of Kentucky in that case, and compare the two, we are constrained to believe from its provisions that these code commissioners had the case before them in framing this amendment to the Act of 1904, and that these commissioners and the legislature never intended to explain that an oil tank or warehouse sitting off by itself was to be considered an oil depot. Had the code commissioners and the legislature wanted

simply to hold that a tank or building in which oil is stored for delivery, sitting off by itself, would constitute an oil depot and that was their sole purpose for amending the statute, they would have used words that were absolutely appropriate to so designate them. But these code commissioners and the legislature did not intend and could not have intended the language which it used in amending the Act of 1904 to mean what appellees contend that it does mean, but under the language it is expressed plainly and unequivocally that it was not the station upon which the tax was being placed, but that the tax was being placed upon each building or tank in which oil was stored for delivery.

Argued orally by *Elmer C. Sharp* and *T. H. Johnson,* for appellant, and *Chas. S. Middleton, G. G. Lyell* and *Wm. H. Watkins,* for appellees.

Holden, P. J., delivered the opinion of the court.

The suit is by the state revenue agent for the recovery of privilege taxes and damages thereon, alleged to be due by appellee, Texas Oil Company, to the state of Mississippi, and the various municipalities therein, for the operation of oil depots for several years; the privilege tax being demanded under and by virtue of section 3843, Code of 1906 (section 6555, Hemingway's Code).

The circuit judge to whom the case was submitted decided that no recovery could be had against the oil company for a separate tax upon each building or tank, but that the tax imposed was only upon a depot, regardless of the number of buildings or tanks situated thereat. From this judgment the revenue agent, through the attorney-general, prosecutes this appeal.

It is the contention of the revenue agent, through the attorney-general, that it was the evident purpose and intent of the legislature to impose a privilege tax of fifty dollars on each building or tank in which oil is stored for delivery, that this purpose is plainly expressed

by the language of the statute, and that each tank or building was intended to be taxed as a separate depot, even though the distributing station or depot contain several tanks or buildings.

The appellee oil company maintains that the legislature intended to impose a privilege tax upon oil depots as a unit, and did not mean to tax each tank or building as a separate depot, but the tax was imposed upon the one place of business used as a depot or distributing station, regardless of the number of tanks or buildings used thereat; that is, that the aggregation of buildings or tanks at any one place should constitute a depot subject to one tax.

A construction of the act imposing the tax will be decisive of the case. It is the duty of the court to ascertain the real purpose and intent of the statute, where its meaning is not plain, or the letter leads to an absurdity or injustice. And the intent of the statute should be ascertained from its language if its meaning is made clear and unmistakable thereby; but, if the language used is capable of more than one meaning, then the purpose and spirit of the statute, as gathered from all of its provisions, and its history, must be ascertained and declared by the court. We do not think the meaning of the statute here involved is plain and unambiguous with reference to what constitutes an oil depot, upon which the privilege tax in question is sought to be imposed.

If a literal interpretation, as contended for by the appellant, is given the act, then it would have to be construed as meaning that an oil depot, or a station for the distribution of oil, at which, for illustration, were located three buildings and ten tanks, each building and tank would be subject to a separate tax, and the depot or distributing station would be considered, not as one depot, but as thirteen separate depots, each subject to a separate privilege tax. And this would be true, regardless of the size or capacity of the tanks or the buildings, or whether the distributing station, or depot, handled

one thousand gallons or one million gallons of oil per annum. This view would mean that the legislature intended to tax the number of tanks and buildings separately, regardless of size or location, and not to tax the depot as a unit.

On the other side of the question the appellee contends the statute means that one tax only will be imposed upon each depot, or distributing station, as a unit, regardless of whether there be one building or one tank or many buildings and many tanks used at the depot or distributing station, that the legislature intended to make it clear that the tax would be imposed on a single building or tank as constituting an "oil depot," and that only one tax should be assessed on a place of business, or depot, as a unit, whether it contains one single tank or many tanks. The statute in question was enacted in 1904, and reads as follows:

"Laws 1904.—Chapter 76 entitled—

"An Act Creating Privilege Taxes on Certain Industries in the State of Mississippi.

"Sec. 64.—*Oil Depot.*

On each oil depot ......................................$50.00"

In 1906 (Laws 1906, chapter 114) the legislature amended the act to read:

"Sec. 3843.—*Oil Depot*:

On each oil depot ......................................$50.00"

"Each building or tank where oil is stored for delivery shall be deemed a depot, but this provision shall not apply to merchants who retail oil to their customers in the regular course of business."

It will be observed the statute in 1904 provided as follows: "Oil Depot. On each oil depot..$50.00." In 1906 the legislature amended the act by adding: "Each building or tank where oil is stored for delivery shall be deemed a depot. . . ."

The question then is, What was the purpose and intent of the legislature in adding the provision that "each building or tank where oil is stored for delivery shall

be deemed a depot"? The meaning of the statute is not clear, in our opinion, and a true construction can-not be reached from the language alone, and therefore it will be necessary to look further than the language in order to ascertain the intent and spirit of the statute as distinguished from its letter; the rule being that the spirit and purpose must govern over the letter, where there is a conflict between the two.

The conditions existing in 1904, when the tax was im-imposed, and in 1906, when it was re-enacted with the addition of the definition as to what shall be deemed a depot, justifies us in the view that the legislature intend- ed to impose a tax upon each oil depot—that is, a tax upon each place of business, as a unit, used for the dis-tribution of oil, and that the one tax is upon the place and not upon the basis of the quantity of oil handled, nor the capacity or number of the tanks or buildings used at the depot (distributing station)—and the pro-vision that each building or tank where oil is stored for delivery shall be deemed a depot was intended to de-clare that one or more tanks, or buildings, at any one location, shall constitute an oil depot and be subject to the privilege of fifty dollars per annum.

Under the act of 1904 confusion could arise as to what is an oil depot. Some might claim that a single tank would not be a depot, and others might claim that a de-pot consisted of many tanks and buildings located in different parts of a city, for instance, and that one tax for the privilege on one depot would cover all tanks and buildings at all stations or places of business where oil was stored and distributed in a city.

The amended act of 1906 intended to provide, as we see it, that the place or station where oil is stored and distributed shall be deemed a depot, even though it may have only one small tank and handle a very small amount of oil, or it may have many tanks and handle a large quantity of oil, provided that the business is carried on at the one place, the one depot; and those oil companies

which operated distributing stations at different points in a city or community would be deemed to have a separate depot at each place where there was located and used one or more tanks or buildings.

It seems clear to us that, if the legislature had intended to tax each tank and each building under all conditions, it would have been easy to have said so in those words, instead of imposing the tax upon "a depot." If the intention was to tax each building and tank separately, as contended by the appellant herein, the legislature could have inserted the word "separate" preceding the word "depot" in the provision as to what shall be deemed "a depot." The act would then have plainly said that "each building or tank where oil is stored for delivery shall be deemed a separate depot." But the legislature did not so express itself.

The subject matter dealt with by the statute was a tax on an "oil depot;" and in construing the statute we should not lose sight of the fact that the dominant thing dealt with was an "oil depot," and not a building or tank as such. Why should the legislature have used the words "oil depot" at all if it intended to deal separately with the buildings and tanks?

The definition of a depot is well known, and we think the tax was meant to go against the place, the depot, and there would be but one tax for one place, regardless of how many buildings or tanks were used thereat. The legislative mind was that the distributing station should be taxed as a single place of business, and not upon the basis of the amount of business done or the capacity or number of the tanks.

Therefore, if an oil company should have ten distributing stations, places, or depots, in a city or community, the tax would be imposed upon each place of business, even though there be but one tank or one building at each place. So it follows, in our judgment, that only one tax can be imposed upon each depot, regardless of the number of tanks or buildings thereat, and, the appellee hav-

ing paid its tax upon the depot here in question, it is not liable for any further tax under the statute involved.

The different departments of the state for the past eighteen years have construed the act to mean that only one tax was imposed upon each depot, regardless of the number of tanks or buildings used thereat. This contemporaneous construction by the different departments of the state, and by the officers, for nearly a generation, is not of itself controlling in the interpretation of the statute, but is deemed valuable in aiding the court in determining the real meaning and purpose of the statute involved, and to that extent, we may say, is persuasive as to the true meaning of the act. The construction that we have adopted was adopted by the tax gatherers, of every kind and character, in our state since it was re-enacted in 1906, and there had been no dissent from this long established view until this action was brought.

In view of the conclusion reached above, the judgment of the lower court must be affirmed.

*Affirmed.*