HAMITER, Justice.
The plaintiffs in these consolidated cases are contesting income tax deficiencies assessed against them by the Collector of Revenue of the State of Louisiana. They urge that the Louisiana Income Tax statute, Chapter 1, Title 47, of the Louisiana Revised Statutes of 1950, does not authorize the assessments; and that, if it does, the statute is in violation and in contravention of the due process clause of the Constitution of the United States.
The Louisiana Board of Tax Appeals, following a hearing before it, approved the levying of the deficiencies. Plaintiffs, thereupon, obtained a review of that ruling in the district court. It held that while the provisions of LRS 47:159, subd. H (relied on by the collector) authorized the assessments the said section offends the due process clause of the federal constitution insofar as it affects these non-resident plaintiffs. Accordingly, it reversed the order of the Board of Tax Appeals, and rendered judgment in favor of plaintiffs disallowing in full the taxes, penalties and interest assessed. The collector is appealing from that judgment.
The case was submitted to the district court on the record of the hearing previously had before the Board of Tax Appeals wherein the pertinent facts were stipulated. From the stipulation it appears that plaintiffs, who are not now and have never been residents of Louisiana, were the owners of all of the stock (at no time ever physically located in this state) in the Edward Mead Johnson Corporation, a Delaware entity, the principal place of business of which was in Evansville, Indiana, where the management of its affairs occurred. However, the corporation was qualified to do business in the State of Louisiana, its registered office having been'the law offices of its legal counsel in New Orleans. It owned an undivided in *545 terest in certain lands situated in Plaque-mines Parish, Louisiana, which, over the years, had enhanced considerably in value.
In 1951 the corporation was completely dissolved by a liquidation made pursuant to the provisions of Section 112(b) (7) of the United States Internal Revenue Code. In the liquidation the assets were exchanged to the plaintiff shareholders for their stock in proportion to their respective ownerships. As a result of the increase in the market value of the Louisiana lands, owned by the corporation and distributed to the shareholders in exchange for their stock, a gain was imputed to each plaintiff.
Contending that under the provisions of LRS 47:159, subd. H the gain imputed to the shareholders was allocable to this state and taxable here, the Louisiana Collector of Revenue assessed the contested deficiencies against plaintiffs individually. These deficiencies, including taxes, interest and penalties, amounted to the total sum of $17,256.34.
In 1951 (when the liquidation occurred) Section 159, subd. H, appearing in Sub-part B of Part II of Chapter 1 of Sub-title II of LRS Title 47, provided: “Situs of stock cancelled or redeemed in liquidation. In cases where property located in Louisiana is received by a shareholder in the liquidation of a corporation, the stock cancelled or redeemed in the liquidation shall, for purposes of determining taxable gain under this chapter, be deemed to have its taxable situs in this state to the extent that the property of the corporation distributed in liquidation is located in Louisiana. If only a portion of the property distributed in liquidation is located in Louisiana, only a corresponding portion of the gain realized by a shareholder shall be considered to be derived from Louisiana sources. * * * ”
The Collector of Revenue recognizes that the taxes were, to quote from his brief to this court, “imposed upon the stockholders rather than the corporation itself.” And he virtually concedes that but for the language of such section relied on, which assertedly places the situs of the stock in Louisiana, there would be no basis for levying the taxes claimed. Thus, again quoting from his brief, he states: “ * * * In the absence of the provisions in R.S. 47:159IT that portion of the distribution of Louisiana property which went to non-residents would totally escape the incidence of the tax. * * * ”
The plaintiffs agree that if such section stood alone it would fit the situation which exists here, and that they would be subject to the taxes levied. However, they contend that since they have always been and are now non-residents of Louisiana any taxes imposed on them must be computed under the provisions of Part II, Sub-part F of the Income Tax law, particularly the provisions contained in LRS 47:241-243 which relate specifically to the computation *547 of income of (and which are found under the heading entitled) “Nonresident Individuals and Foreign Corporations.” In those sections the following pertinent recitations occur: “Net income subject to tax —The net income of a nonresident individual or foreign corporation subject to the tax imposed by this Chapter shall be the sum of the net allocable income earned within or derived from sources within this state, as defined in R.S. 47:243, * * Section 241. “Segregation of items of gross income- — All items of gross income not otherwise exempted in this Chapter, shall be segregated into two general classes as follows: (1) The class of gross income to be designated as ‘allocable income’ shall include the following: * * * (b) Profits from sales or exchanges of capital assets; * * Section 242. “Computation of net allocable income from Louisiana sources — Items of gross allocable income shall be allocated directly to the states from which such items of income are derived, on the following bases: * * * (3) Other interest, dividends, and profits from sales and exchanges of capital assets consisting of incorporeal property or rights, shall be allocated to the state in which the securities or credits producing such income have their situs, which shall be at the business situs of such securities or credits, if they have been so used in connection with the taxpayer’s business as to acquire a business situs, or in the absence of such a business situs, shall be at the legal domicile of the taxpayer in the case of an individual or at the commercial domicile of the taxpayer in the case of a corporation; * * Section 243. (Italics ours.)
According to these unequivocal provisions the situs of an incorporeal upon which a non-resident individual realizes a profit as the result of a sale or an exchange thereof is deemed to be at the domicile of the owner of that intangible, and the profit is allocable to the state of such domicile for income tax purposes unless the incorporeal has acquired a business situs elsewhere. This was the interpretation that we placed on these provisions in United Gas Corporation v. Fontenot, 241 La. 488, 129 So.2d 748. Therein we said: “Thus it may be seen from these provisions that the legislature has provided in clear and unambiguous language that whether the taxpayer is a nonresident individual or a foreign corporation, the only portion of the income derived from intangibles that are allocated to other states are; * * * (2) interest (other than that derived from the notes and accounts of foreign customers), dividends, and profits from sales and exchanges of capital assets consisting of incorporeal property or rights where the securities and credits producing such income have acquired a situs in another state. In the event the income is derived from such securities or credits, then the allocation is to be (a) to the state where they have acquired a ‘business situs’ and, if *549 they have not acquired a ‘business situs’ in another state, then (b) to the state of legal domicile if the taxpayer is an individual, and (c) the state of ‘commercial domicile’ if the taxpayer is a corporation.
“ * * * If the income is other interest, dividends, and profits from securities or credits that have acquired a ‘business situs’ in another state, then that income is allocated to the state of ‘business situs’ whether received by a nonresident individual or a foreign corporation. If no such ‘business situs’ has been established in another state under the latter condition, then the income in the case of the individual is allocated to his legal domicile; * * *.
“To say it another way, all of the gross income from the intangible assets of a nonresident individual or a foreign corporation deemed to be earned within or derived from sources within Louisiana is allocated to the legal domicile of the former and the ‘commercial domicile” of the latter unless * * * derived from securities or credits having a ‘business situs’ in another state, in which events, the gross income from such source is allocated to these respective states.”
In the United Gas Corporation case we concluded that the plaintiff’s income from its intangibles were properly allocable to this state only because of the finding that such corporate taxpayer, which owned the intangibles and realized profits therefrom, had its commercial (and its actual legal) domicile here. The plaintiffs in the present case, on the other hand, are nonresident individuals; and under the above quoted statutory provisions of LRS 47:241-243 the situs of the stock is deemed to be at their respective domiciles in the absence of a business situs in some other state.
Therefore, it clearly appears that these last mentioned provisions are in direct and irreconcilable conflict with those of LRS 47:159, subd. H, and we must determine which take precedence in and govern the instant dispute. And, as in almost all cases involving statutory conflict, the resolution is not without some difficulty. However, in view of certain well recognized rules of statutory construction, as well as of the history and of certain other provisions of the Income Tax statute itself, we have concluded that the special provisions of Sub-part F of Part II (LRS 47:241-243) are controlling.
The original Income Tax statute, Act 21 of 1934 (which has been amended on innumerable occasions), provided for the taxation of income of non-residents derived from sources within and without this state (see Section 34 thereof). “Supplement F” of that Act (Sections 62-68) set forth special rules peculiar only to foreign corporations. And stipulations relative to “Distributions by Corporations”, generally, were contained in Section 32 thereof.
*551 The 1934 Act was almost in the same form (insofar as the issue involved here is concerned) when Act 158 of 1944 amended the mentioned Section 32 by adding thereto a sub-section “(h)”, the provisions of which are substantially those carried into the Revised Statutes of 1950 as Section 159, subd. PI of Title 47.
But in 1948 the Legislature, by Act 354, made changes in “Supplement F” which had formerly dealt solely with the exceptions and variations as to foreign corporations. The sections comprising “Supplement F” (62 to 68) were rewritten so as to set out a complete system for computing allocable and apportionable income and deductions for non-resident individuals, as well as for foreign corporations. And Section 34(b) was amended so as to provide that with respect to a non-resident individual or foreign corporation the net income was to he computed as provided in "Supplement F” of such Act.
Among the revisions of “Supplement F” were provisions contained in Section 64 of the 1948 statute that “ * * * profits from sales and exchanges of capital assets consisting of incorporeal property or rights, shall be allocated to the state in which the securities or credits producing such income have their situs, which shall be at the business situs of such securities or credits, if they have been so used in connection with the taxpayer’s business as to acquire a business situs, or, in the absence of such a business situs, shall be at the legal domicile of the taxpayer in the case of an individual or at the commercial domicile of the taxpayer in the case of a corporation; *
“Supplement F” of the 1948 Act later because “Sub-part F” of the Revised Statutes of 1950 (LRS 47:241-248) ; and it was entitled, as aforeshown, “Non-resident Individuals and Foreign Corporations”.
From the foregoing history of the income tax statute it is obvious that the Legislature by Act 354 of 1948 intended to deal with the entire subject matter of computing taxable income of special classes, namely, non-resident individuals and foreign corporations; and it seems clear that such legislation, therefore, should take precedence over all prior provisions on the subject.
Of course, LRS 47:159, subd. H was also included in the 1950 Revised Statutes. Nevertheless, its general provisions are in conflict with those specific ones of LRS 47 :- 241-243, and in resolving this conflict the intention of the Legislature is most important.
 The general rule with regard to such a conflict in the same legislation is, as set forth in 82 C.J.S. verbo Statutes § 347b, page 720, as follows: “General and special provisions in a statute should stand together, if possible, and be read together and, if possible, harmonized with a view to *553 giving effect to a consistent legislative policy. Where, however, general provisions, terms, or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part, the particular provisions must govern or control, as a clearer and more definite expression of the legislative will, unless the statute as a whole clearly shows a legislative intention to the contrary, or some other canon of statutory construction compels a contrary conclusion. * * * ” See also Crawford on Statutory Construction, page 267, Section 167.
Moreover, in construing the intent of the entire tax law, as enacted into the Revised Statutes, particular reference must be made to LRS 47:161 (the second section following that relied on by the collector) that: “In the case of a nonresident individual or foreign corporation, items of gross income, expenses, losses and deductions, from whatever source received or incurred, not otherwise exempted by this Chapter, shall be included in the taxpayer’s return; but, for the purpose of this Chapter, the amount of tax shall be computed only upon the net income earned within or derived from sources within this state, such net income to be computed, as provided in Siib-part F of Part II of this Chapter." (Italics ours.)
Also, LRS 47:22, entitled “Special Classes of Taxpayers”, provides: “The application of the general provisions of Part I, and Sub-parts A and B of Part II of this Subtitle to each of the following special classes of taxpayers, shall be subject to the exceptions and additional provisions found in Part II of this Sub-title applicable to such class, as follows: j{í ^ % ‡ H* ‡
“(4) Foreign corporations, Sub-part G of Part II.” (Note: — Sub-parts Á and B of Part II include Sections 121 through 167. Further, the reference to Sub-part G of Part II is obviously a typographical error and was intended as Sub-part F of Part II, this being shown by its source: Act 21 of 1934.)
Therefore, our conclusion is that in carrying the income tax statute (with its conflicting amendments) into the Revised Statutes the Legislature particularly exhibited its intention that the Sections of Part II, Sub-part F should continue to comprise the law with respect to the special classes to whom it refers — non-resident individuals and foreign corporations — -in computing income tax assessments; and that any conflict between the provisions thereof and those contained in Sub-parts A and B of Part II (where LRS 47:159, subd. H is found) should be resolved in favor of Sub-part F.
Having concluded that plaintiffs’ net taxable income should be computed according to the provisions of Sub-part F, we further hold that the imputed gain is not allocable to Louisiana and hence not sub *555 ject to the attempted tax assessments. This is because the shares of stock on which the gain was realized had not acquired a business situs here and the owners thereof were domiciled elsewhere.
There is no evidence whatever in the record from which it could even be inferred that such a business situs had been acquired in Louisiana; in fact, the stipulation entered into by the parties tends to negative such a finding. Furthermore, the Collect- or of Revenue has never suggested, through these entire proceedings, that there was any basis for such a finding; and, in recognizing that if LRS 47:159, subd. H be inapplicable the imputed gain would be nontaxable, he has virtually conceded that no business situs in Louisiana for the shares of stock could have been shown. Of course, if he had established that such shares had acquired a business situs here, the gain could and would have been allocated to Louisiana under the provisions of Sub-part F (LRS 47:241 et seq.) and taxable in this state.
In a supplemental brief filed in this court the collector insists that the provisions of 159, subd. H are special and, for that reason, they should take precedence over the conflicting specific ones found in LRS 47 :- 241-243. However, he overlooks those provisions contained in LRS 47:22 and 161, quoted above.
But conceding arguendo that Section 159, subd. H is special in nature, as contended, there still remains a conflict between the two sets of specific provisions in question, for each set would place the situs of the shares of stock at a different location insofar as these plaintiffs are concerned. And this being true we must give recognition to the rule of construction relative to taxing statutes that “ * * * where the intent or meaning of tax statutes, or statutes levying taxes, is doubtful, they are, unless a contrary legislative intention appears, to be construed most strongly against the government and in a favor of the taxpayer or citizen. Any doubts as to their meaning are to be resolved against the taxing authority and in favor of the taxpayer, or, as it is sometimes put, the person upon whom it is sought to impose the burden. * * *” 51 American Jurisprudence, verbo Taxation, page 366, Section 316. See also 51 American Jurisprudence, verbo Taxation, page 616, Section 650 ; 47 C.J.S. verbo Internal Revenue § 53a, page 173, and Crawford on Statutory Construction, page 502, Section 257.
Our holding that LRS 47:159, subd. H does not authorize the imposition of the assessments contested herein makes unnecessary a determination of the question of the constitutionality of that section insofar as these plaintiffs are concerned.
*557 For the reasons assigned the judgment of the district court, which reversed the order of the Board of Tax Appeals and disallowed the taxes, penalties and interest assessed hy the Louisiana Collector of Revenue against these plaintiffs, is affirmed.