494 So.2d 370 (1986)
Harry S. ANDERSON, et al.
v.
A.C. LAMBERT, Sr., Commissioner of Revenue, Mississippi State Tax Commission.
No. 55676.
Supreme Court of Mississippi.
September 17, 1986.
Harris H. Barnes, III, Gulfport, for appellants.
James H. Haddock, Bobby R. Long, Gary W. Stringer, Jackson, for appellee.
Before HAWKINS, P.J., and DAN M. LEE and ANDERSON, JJ.
HAWKINS, Presiding Justice, for the Court:
This is an appeal from the 1st Judicial District of the Hinds County Chancery Court, wherein Harry S. Anderson and other nonresident taxpayers sought a redetermination of a State Tax Commission ruling that denied the taxpayers' request for a refund. The chancellor held that the corporate distributions going to the nonresident stockholders were subject to being taxed in Mississippi, since the distributions had a taxable situs in Mississippi. A cross bill against appellant Marne M. Anderson was likewise granted. Finding no error, we affirm.

*371 FACTS
The subject litigation arises from the sale of corporate assets of King & Anderson, Inc., (K & A) and Planters Manufacturing Company (Planters). In 1980 and 1981, K & A and Planters sold corporate property pursuant to an Internal Revenue Code (IRC) § 337 Liquidation Plan. The property, both real and personal, which was sold pursuant to the liquidations of the respective corporations is and always has been Mississippi corporate property. Prior to both sales, proper measures were taken by the shareholders to invoke the provisions of IRC § 337 and Miss. Code Ann. § 27-7-9(j)(3) (Supp. 1980). The sales in question were completed within the statutory time and the statutory language under IRC § 337 and § 27-7-9(j)(3) was followed. Pursuant to the plan of liquidation, the proceeds derived from the sales of the Mississippi property were used to redeem the corporate stock of the shareholders of the two corporations. Those shareholders residing outside the State of Mississippi are the petitioners in this action.
The decision to sell the subject property was made by the shareholders outside the State of Mississippi. The principal discussion with lawyers for the purchaser took place in New Orleans, Louisiana, and the terms and conditions of the sale were agreed to in New Orleans, Louisiana. The sale was closed and the transactions were completed in the State of Mississippi.
The stock owned by the petitioners in K & A was the stock of a Delaware corporation which was doing business in the State of Mississippi. The stock was owned in the following percentages: Harry Anderson, Carolyn Anderson, Stiles Anderson and Elizabeth Anderson, 20 percent; Eugene N.S. Girard, Catherine A. Girard, Christopher A. Girard, Andrew S. Girard, William K.A. Girard and Eugene N.S. Girard, III, 20 percent; Marne M. Anderson, 20 percent. Planters is a Mississippi corporation, and the stock was owned by the petitioners as follows: Harry Anderson family, 1 percent; Girard family, 1 percent; Marne M. Anderson, 1 percent. It is undisputed that all petitioners are nonresidents of the State of Mississippi, and were and still are residents of the States of Louisiana, Florida and Tennessee respectively.
Therefore, nonresident shareholders owned 60 percent of K & A stock. The same nonresident shareholders owned three percent of Planters outstanding stock. This stock was always owned and kept by the nonresident shareholders at their respective residences and domiciles.
Pursuant to the liquidation proceedings and the provisions of Miss. Code Ann. § 27-7-9(j)(3) (Supp. 1980), the amount of three percent (3%) was withheld from each corporate distribution and was paid to the State Tax Commission. The nonresident shareholders assert that this withholding tax is a credit against the shareholders' estimated withholding tax accounts. Since the nonresidents have no taxes to apply this credit against, they therefore request a refund of this three percent withholding tax.
The Commission denied this refund, taking the position that the facts surrounding the corporate liquidation and the redemption of the corporate stock were so interrelated that a taxable situs in Mississippi was established. The nonresident shareholders sought a redetermination of this ruling in the chancery court of Hinds County. Basing his decision on the intent of the legislature, the chancellor held that the corporate distributions going to the nonresident stockholders had a taxable situs in Mississippi and were subject to being taxed in the State. In conjunction, the relief sought by the cross bill against Marne Anderson was granted.
The taxpayers appeal, assigning two errors:
I.
THE LOWER COURT ERRED WHEN IT FOUND THAT THE CORPORATE DISTRIBUTIONS GOING TO THE NONRESIDENT STOCKHOLDERS, THE APPELLANTS HEREIN, HAVE A TAXABLE SITUS IN MISSISSIPPI *372 AND ARE SUBJECT TO THE MISSISSIPPI INCOME TAX. IN THE SAME MANNER THE LOWER COURT ERRED IN GRANTING THE RELIEF PRAYED FOR IN THE CROSS BILL.
II.
THE LOWER COURT ERRED WHEN IT FOUND THAT THE STATE OF MISSISSIPPI HAD THE POWER AND AUTHORITY TO TAX A NONRESIDENT OF THE STATE OF MISSISSIPPI.

LAW
Today this Court is called upon to construe the Legislative intent of a tax statute. As a preface to this analysis, we recognize that our primary objective when construing statutes is to adopt that interpretation which will meet the true meaning of the Legislature. Baker v. State, 327 So.2d 288 (Miss. 1976); Carter v. Harrison County Election Comm'n, 183 So.2d 630 (Miss. 1966); Beard v. Stanley, 205 Miss. 723, 39 So.2d 317 (1949). An ancillary objective of this opinion is to make a tax case as simple and as easy to read as possible.
Let us begin with a simple example. A, B and C decide to purchase a tract of land for $10,000. They also decide to have it owned by a corporation with each of them holding equal shares. They form the ABC Corporation and pay into it $10,000 cash, for which they are issued corporate shares. ABC, Inc., then buys the land for $10,000, which is the sole corporate asset. Twenty years later the land is worth $100,000 and A, B and C wish to sell it and dissolve the corporation.
Prior to 1954, upon sale by ABC, Inc., the corporation would have realized a capital gain of $90,000 and would owe a federal capital gains tax. Let us assume the capital gains tax was $15,000. ABC, Inc., would then have remaining $75,000 to distribute to A, B and C in exchange for the shares for which they paid $10,000. Thus, the shareholders would have a capital gain of $65,000 and also be subject to a federal capital gains tax on this amount.
To eliminate this double taxation the United States Congress in 1954 enacted Section 337 of the Internal Revenue Code. This section provides that if a corporation, under a plan of complete liquidation, distributes all its assets in a 12-month period, no gain or loss would be recognized to the corporation.
Thus, in the above example, ABC, Inc., would pay no tax on its $90,000 profit, distribute it to A, B and C in exchange for their shares, and they individually would be taxed on the $90,000 capital gain.
Prior to 1980, under the above example, if the land was located in Mississippi, the corporation and the shareholders would each have a capital gain under our Mississippi state taxation statutes. See Miss. Code Ann. §§ 27-7-1 and 27-7-9 (1972).
Let us add a factor to the example. Let us assume that of the three shareholders, only A was a citizen of Mississippi. This, of course, would be irrelevant to the United States Government, because the corporation and all shareholders are under the taxable jurisdiction of the federal government.
As to this State, however, would B and C have had to pay a capital gain tax to the State of Mississippi upon the retirement of their shares in final distribution of the corporate assets? We never addressed this particular question prior to 1980, and we need not address it in this decision. It is the question rather than the answer which is significant. B and C may have been required to pay a Mississippi capital gain tax, or they may not have.
What is certain, however, is that ABC, Inc., would have been subject to this State's capital gain tax, whether B and C would have or not. The entire corporate assets consisted of land located in Mississippi.
In 1980 this State enacted Chapter 461, Laws 1980, subparagraphs (j)(3) of which states:
§ 27-7-9. Gain or loss on disposition of property.
(j) Special rules.

*373 (3) Gain or loss on sales or exchanges in connection with certain liquidations. Subject to the condition provided herein, no gain or loss shall be recognized to a corporation from the sale or exchange by it of property within the period of twelve (12) months beginning on the date of the adoption by said corporation of a plan of complete liquidation if such gain or loss would not be recognized to such corporation for federal income tax purposes under the provisions of Section 337 of the Federal Internal Revenue Code. As a condition to non-recognition of gain or loss, such corporation shall withhold from distributions to shareholders and pay over to the commissioner, on forms furnished, an amount equal to three percent (3%) of the total value of any money, property or instruments of indebtedness distributed to all stockholders as a liquidating distribution. Such amounts paid to the commissioner shall be deemed to be payments of estimated tax of the stockholders pursuant to the Mississippi Income Tax Withholding Act of 1968 and shall be allocated pro rata to the stockholders taxpayer account.
The headnote of this statute reads in pertinent part:
AN ACT to amend Section 27-7-9, Mississippi Code of 1972, to clarify the basis for determining gain or loss on the disposition of property; ... to establish special rules with Sections 332, 333, 334, 337 and 355 of the Federal Internal Revenue Code, with modifications... .
The 1980 Act paragraphs (j)(3) thus provides that no taxable gain or loss from a sale or exchange of property shall be recognized to a corporation which liquidates pursuant to Section 337 IRC, provided the corporation withholds and pays to the state tax commissioner an amount equal to three percent of the sum being distributed to the shareholders.
Back to our example. After 1980 a Section 337 liquidation would relieve ABC, Inc., of all capital gains tax, pursuant to Miss. Code Ann. § 27-7-9(j)(3) (Supp. 1980).
It is the plaintiff's contention that it was the intent of the Legislature by this enactment to relieve not only the corporation of any capital gain tax, but B and C as well. Thus, out of a $90,000 profit, only A would owe the State of Mississippi any capital gain tax, and this on his $30,000.
If we accept the contention of the petitioners, the Legislature in 1980 enacted a special largesse restricted especially and solely for nonresidents of this State, while relinquishing a substantial tax interest.
Before proceeding in our analysis, we reiterate a well-settled rule in Mississippi regarding statutory construction: "Unthought of results must be avoided if possible, especially if injustice follows, and unwise purpose will not be imputed to the Legislature when a reasonable construction is possible." Gambrill v. Gulf States Creosoting Co., 216 Miss. 505, 510, 62 So.2d 772, 775 (1953).
It is the contention of the petitioners that Miss. Code Ann. § 27-7-9(j)(3) (Supp. 1980) evidences a legislative intent to tax Mississippi residents only to the exclusion of nonresidents. We first observe that the statute in question makes no distinction whether the taxpayer is a resident or nonresident. Under the circumstances of the instant case, two possible constructions of the statute are offered: 1) that "shareholder" means resident shareholders only; or 2) that "shareholder" means all shareholders.
The plaintiffs' argument is that "shareholder" must mean "resident shareholders" because the three percent withholding amount is to be applied against the stockholder's taxpayer account. The plaintiffs argue that since they, as nonresidents, have no Mississippi income, the amounts withheld should be refunded to them.
In Quitman County v. Turner, 196 Miss. 746, 18 So.2d 122 (1944), this Court stated:
Legislative intent as an aid to statutory construction, although often elusive to the perception of unaided vision, remains nevertheless the pole star of guidance. *374 Appellee invokes an elemental formula acceptable to lay and legal usage that what the legislature said is clear and unambiguous and what it meant is to be found simply by what it said. This formula should not be discredited. It is only by words that statutory intent is to be disclosed, but it does not follow that such intent is always accurately so revealed. Ambiguity is not solely the product of obscurity . ..
Id. at 759-760, 18 So.2d at 124. We further stated:
It is our duty to support a construction which would purge the legislative purpose of any invalidity, absurdity, or unjust equality ... To this end, not only the language but the purpose and policy which the legislature had in view must be considered.
Id. at 760-61; 18 So.2d at 124.
This rule of construction was applied in Robertson v. Texas Oil Co., 141 Miss. 356, 106 So. 449 (1925), a case involving a tax statute, where we stated:
A construction of the act imposing the tax will be decisive of the case. It is the duty of the court to ascertain the real purpose and intent of the statute, where its meaning is not plain, or the letter leads to an absurdity or injustice. And the intent of the statute should be ascertained from its language if its meaning is made clear and unmistakable thereby; but, if the language used is capable of more than one meaning, then the purpose and spirit of the statute, as gathered from all of its provisions, and its history, must be ascertained and declared by the court.
Id. at 362, 106 So. at 449.
In Canal Bank & Trust Co. v. Brewer, 147 Miss. 885, 114 So. 127 (1927), we stated:
In construing statutes, however, the chief aim of the courts should be to reach the real intention of the legislature. A construction which will bring about manifestly unthought-of and unjust results will be avoided, if possible, and, if necessary to avoid such results, the courts will widen or narrow the letter of the statute.
Id. at 923, 114 So. at 128.
See Thornhill v. Ford, 213 Miss. 49, 64, 56 So.2d 23, 30 (1952) (logic and sound economic principles may serve as guide to legislative intent). See also Aikerson v. State, 274 So.2d 124 (Miss. 1973).
Having recited these familiar principles of construction, we once again examine the conflicting interpretations of Miss. Code Ann. § 27-7-9(j)(3) (Supp. 1980). The State contends that the section was meant to tax all shareholders, while the petitioners assert that the statute intended for nonresidents to escape the capital gains tax that resident shareholders must remit. In the absence of a clear statement to such effect, we cannot believe it was the intention of our Legislature to make such an invidious distinction between residents and nonresidents, with no possible benefit to this State. See McCaffrey's Food Mkt. v. Mississippi Milk Comm'n, 227 So.2d 459, 465 (1969) (construction of statute which is most beneficial and which will avoid objectionable consequences will be adopted).
Accordingly, we do not construe § 27-7-9(j)(3) (Supp. 1980) as a clear unequivocal intent by the Legislature to relieve nonresident taxpayers, along with the corporation, of all capital gain tax.
We now turn to petitioner's second assignment of error, whether or not Mississippi had the power and authority to tax a nonresident. In the case of Johnson v. Collector of Revenue, 246 La. 540, 165 So.2d 466 (1964), the Louisiana Supreme Court was confronted with a fact pattern very similar to our case.
In Johnson the nonresident shareholders owned all the stock of an Indiana corporation that was qualified to do business in Louisiana. The corporation owned Louisiana land that had increased in market value over the years. In 1951 the corporation was dissolved by what would be today a 333 (one month) liquidation. In the liquidation the land was distributed to the nonresident shareholders in exchange for their *375 stock. 165 So.2d at 467. The Louisiana Collector of Revenue imposed a state tax on the gain pursuant to a state statute that specifically applied to such a situation.
On rehearing, the Johnson court ruled that the specific state statute was to be considered as part of the overall system of taxation of a nonresident. Turning to the issue of constitutionality of the specific state statute, the court stated:
[The situs of intangible property] must be fixed by law. We readily assume that a state cannot arbitrarily assign the situs of stock owned by a nonresident to the state for income tax purposes. The coverse of this assumption, however, is a sound principle of law. When there is a reasonable basis in fact, the situs of the stock of a nonresident may be fixed in the state for tax purposes. 165 So.2d at 476. [Emphasis added]
In the case at bar, we hold that our Legislature also intended nonresidents to be taxed on a 337 liquidation by enacting Miss. Code Ann. § 27-7-9(j)(3) (Supp. 1980).
The general rule regarding the constitutionality of taxation of a nonresident was laid down by the United States Supreme Court in Wisconsin v. J.C. Penney Co., 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267 (1940). This well-reasoned opinion of Justice Frankfurter instructs us to examine the practical effect of a state tax instead of relying on catchphrases and buzzwords. The Court states:
[I]n passing on [a tax's] constitutionality we are concerned only with its practical operation, not its definition or the precise form of descriptive words which may be applied to it.
* * * * * *
"Taxable event," "jurisdiction to tax," "business situs," "extraterritoriality," are all compendious ways of implying the impotence of state power because state power has nothing on which to operate. These tags are not instruments of adjudication but statements of result in applying the sole constitutional test for a case like the present one. That test is whether property was taken without due process of law, or, if paraphrase we must, whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return. [Emphasis added]
311 U.S. at 444, 61 S.Ct. at 249-250, 85 L.Ed. at 270-271.
The J.C. Penney court expounded further on the constitutionality of state taxation:
Ambiguous intimations of general phrases in opinions torn from the significance of concrete circumstances, or even occasional deviations over a long course of years, not unnatural in view of the confusing complexities of tax problems, do not alter the limited nature of the function of this Court when state taxes come before it. At best, the responsibility for devising just and productive sources of revenue challenges the wit of legislators. Nothing can be less helpful than for courts to go beyond the extremely limited restrictions that the Constitution places upon the states and to inject themselves in a merely negative way into the delicate process of fiscal policymaking.
Id. at 445, 61 S.Ct. at 250, 85 L.Ed. at 271.
For this reason we need not consider the confusing definition of "taxable situs," but instead the nature and reasonable effect of the tax will be examined. The Louisiana Supreme Court applied the J.C. Penney test in Johnson v. Collector of Revenue, supra, and found that as a result of the mineral development on the land owned by the corporation, the land substantially appreciated in value. The court stated:
Clearly, such a gain from oil-producing lands in Louisiana reflects the protection and opportunities that the state has afforded. It is true that the state opened its door to the business of the corporation. But the privilege of doing business in Louisiana is not the important thing here. The state also did some things in reference to the property: State laws *376 protected the ownership, maintenance, and development of the lands; the exploration and production of minerals took place under the aegis of a conservation program created by state law and administered by state personnel; finally, the vesting of the title of these lands in the plaintiffs was accomplished under Louisiana law.

The plaintiffs attempt to discount these benefits on the theory that they accrued to the corporation, who then owned the lands, rather than to the taxpaying stockholders. We cannot accept this theory. It overlooks the fact that the land itself benefitted as evidenced by its substantial increase in value. The stockholders realized the gain when they surrendered their stock and received the property. [Emphasis added]
165 So.2d at 477-78.
In the instant case, the taxing power exerted by Mississippi also bears a fiscal relation to the protection, opportunities and benefits conferred by the State. The petitioners received benefits from this State and were protected by its laws. This State provided the petitioners a means to close the transactions involving the liquidations, and authorized the petitioners to elect to liquidate under 337. Once the petitioners made this election, the corporation was allowed to liquidate without paying taxes, which resulted in a greater distribution being paid to the shareholders. When the petitioners chose this particular method of liquidation, they made themselves subject to a fair Mississippi tax on a transaction that bears a fiscal relation to this State.
Accordingly, we find Miss. Code Ann. § 27-7-9(j)(3) (Supp. 1980) constitutional and we therefore affirm the judgment of the lower court.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.