DICKINSON, Justice, for the Court:
¶ 1. The defendant — an employee of a private company that (according to Mississippi Law)[1] provides an alternative to incarceration services — was indicted and convicted under a statute[2] that criminalized certain acts committed by an “employee of any contractor providing incarceration services.” Since the terms “incarceration” and “alternative to incarceration” are mutually exclusive, we reverse and vacate the conviction.
BACKGROUND FACTS AND PROCEEDINGS
¶ 2. Court Programs is a private company that contracts with the City of Guliport to provide probation and monitoring services for persons convicted of misdemeanors in Gulfport City Court. While monitoring the probation activities of Dorothy Lakay Rayborn (who had been convicted of shoplifting), Tipton offered to pay her monthly fine if she would shower in front of him.
¶ 3. Tipton was indicted and convicted for violation of Mississippi Code Section 97-11-37. He now appeals, raising numerous issues including that — because he did not fall within any of the categories of persons covered by the statute under which he was indicted — he was entitled to a directed verdict. We agree.
ANALYSIS
¶ 4. For a trial judge, “considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.’ ”[3]
¶ 5. Our standard of review of a trial judge’s decision on a motion for directed verdict is as follows: “[A]fter viewing the evidence in the light most favorable to the prosecution, [could] any rational trier of fact ... have found the essential elements of the crime beyond a reasonable doubt.”[4] If the facts and inferences “point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,” this Court must reverse and render.[5]
¶ 6. Tipton was charged under Mississippi Code Section 97-11-33, which provides:
If any judge, justice court judge, sheriff, deputy sheriff, sheriffs employee, constable, assessor, collector, clerk, county medical examiner, county medi *681 cal examiner investigator, employee of the Mississippi Department of Corrections, employee of any contractor providing incarceration services or any other officer, shall knowingly demand, take or collect, under color of his office, any money fee or reward whatever, not authorized by law, or shall demand and receive, knowingly, any fee for service not actually performed, such officer, so offending, shall be guilty of extortion, and, on conviction, shall be punished by fine not éxceeding Five Thousand Dollars ($5,000.00), or imprisonment for not more than five (5) years, or both, and shall be removed from office.[6]
Thus, to convict Tipton of the crime for which he was indicted, the State carried the burden of proving beyond a reasonable doubt that Tipton belonged to one of the enumerated statutory categories. The State argues that Tipton was an “employee of [a] contractor providing incarceration services.” [7]
¶ 7. During its case-in-chief, the State twice called Charles Langenbacker, a manager at Court Services during Tipton’s tenure with the company. Langenbacker’s testimony was the only evidence as to the nature of the services provided by Court Programs. He testified that Court Programs, Inc., a private corporation, “had an agreement or contract with the City of Gulfport to administer probation services for the courts.” He confirmed that Tipton was assigned by the company to monitor Dorothy Lakay Rayborn. On cross-examination, Langenbacker said of his company:
Q. And, in fact, y’all don’t offer any incarceration services at all, do you?
A. No, sir.
Q. In fact, you offer alternatives to incarceration, is that correct?
A. That is correct.
Q. So, your company is not a contractor that offers incarceration services; true?
A. Yes, sir, that is true.
(Emphasis added.)
¶ 8. Prior to resting, the State was permitted to recall Langenbacker. The prosecutor elicited from this witness that Court Programs, Inc., was a private entity, and that the company monitored some persons whom courts had placed on house arrest. Such monitoring was accomplished, according to Langenbacker, by means of ankle bracelets, telephone voice recognition, and GPS. On cross-examination, Langen-backer said of the company’s employees:
Q. Because your employees, your private employees were not certified law enforcement officers, correct?
A. Yes, sir, that is correct.
Q. They were not certified Department of Correction [sic] officers, correct?
A. Yes, sir.
Q. And then they weren’t any type of officer, they were only private employees. Isn’t that true?
A. That is true.
Q. Last question. It is true that your company did not provide incarceration services. It provided alternatives to incarceration services. Is that correct?
A. That is correct.
(Emphasis added.)
¶ 9. After the close of the evidence, Tip-ton moved for a directed verdict. In denying the motion, the trial court stated that *682 the services provided to the municipal court in Gulfport [by Court Programs] included house arrest, included what we refer to as intensive supervision. In felony cases, that is equivalent to, as I understand it by our Supreme Court, they have equated that to incarceration. So, those services are included. I think it’s without question the testimony here establishes they don’t provide prison facilities, but they do provide incarceration services. And I think the status of Mr. Tipton would be included, and his conduct proscribed by this particular statute.
Tipton argues that this construction violates the long-established rule that criminal statutes are to be construed liberally in favor of the accused and strictly against the State, and that house arrest and “incarceration services” cannot be synonymous because Mississippi Code Section 47-5-1003(1) defines “intensive supervision,” commonly known as house arrest, as a “program [that] may be used as an alternative to incarceration.”[8] We must agree ■with Tipton.
¶ 10. The interpretation of a statute “is a question of law subject to de novo review.”[9] Furthermore, “[i]t is well settled that when a court considers a statute passed by the Legislature, the first question before the Court is whether the statute is ambiguous. If the statute is not ambiguous, the court should interpret and apply the statute according to its plain meaning without the aid of principles of statutory construction.”[10]
¶ 11. The term “incarceration services” is not defined by statute. In considering the arguments advanced by the State, we must apply the “bedrock law in Mississippi that criminal statutes are to be strictly construed against the State and liberally in favor of the accused.” [11]
¶ 12. Extortion was a common-law offense that could be committed only by officials.[12] The crime was first codified by our Legislature in the 1892 Code (Section 1453). Through the years, the Legislature has amended the statute to expand the list of officials to which the prohibited conduct would apply. Thus far, the Legislature has not seen fit to include a category which applies to persons employed by a private company providing monitoring or probation services.
¶ 13. In order to obtain a proper conviction under Section 97-11-33, the State was required to prove that Tipton was an “employee of any contractor providing incarceration services,” which he was not. Thus, the State failed to prove an essential element of the crime, and we must hold that the trial court erred by failing to grant Tipton’s motion for a directed verdict.
CONCLUSION
¶ 14. Because the State failed to prove an essential element of the crime of extor *683 tion, we reverse the trial court and vacate the judgment.
¶ 15. REVERSED AND VACATED.
CARLSON AND GRAVES, P.JJ., LAMAR AND KITCHENS, JJ., CONCUR. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., RANDOLPH AND PIERCE, JJ.

. See Miss.Code Ann. § 47-5-1003(1) (Supp. 2009).

. Miss.Code Ann. § 97-11-33 (Rev. 2006).

. Bush v. State, 895 So.2d 836, 843 (Miss. 2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss. 1968)).

. Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

. Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)).

. Miss.Code Ann. § 97-11-33 (Rev. 2006).

. The State offered no jury instruction, and makes no argument on appeal, that Tipton was covered by any other category.

. Miss.Code Ann. § 47-5-1003(1) (Supp. 2009) (emphasis added).

. Arceo v. Tolliver, 19 So.3d 67, 70 (Miss. 2009) (citing Sheppard v. Miss. State Highway Patrol, 693 So.2d 1326, 1328 (Miss.1997)).

. Finn v. State, 978 So.2d 1270, 1272 (Miss. 2008) (quoting Harrison County Sch. Dist. v. Long Beach Sch. Dist., 700 So.2d 286, 288-89 (Miss.1997)).

. Coleman v. State, 947 So.2d 878, 881 (Miss.2006) (citing McLamb v. State, 456 So.2d 743, 745 (Miss. 1984)) (emphasis added); see also Duke v. Univ. of Tex. at El Paso, 663 F.2d 522, 526 (5th Cir.1981) ("Ambiguities concerning the ambit of criminal statutes should be resolved in favor of lenity.”) (citing cases).

. 35 C.J.S. Extortion § 5 (2009); See also State v. Jones, 71 Miss. 872, 15 So. 237 (1894).