# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-00415-SCT

*FRANK SANDERS TIPTON*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 02/06/2013 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS M. FORTNER |
| | ROSS PARKER SIMONS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MALISSA WINFIELD |
| | JOHN R. HENRY, JR. |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 03/20/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     The instant matter is a case of first impression, asking the Court whether one wrongfully convicted of a crime and placed in the Intensive Supervision Program, commonly known as house arrest, is entitled to compensation under Mississippi Code Sections 11-44-1 to -7. Frank Sanders Tipton was convicted of extortion and served time in Mississippi Department of Corrections (MDOC) facilities as well as in the Intensive Supervision Program. After the Court vacated his judgment, Tipton filed a claim for compensation for wrongful conviction and incarceration. The State agreed to pay Tipton for his time served

in prison but not for his time in the Intensive Supervision Program. After both sides filed for summary judgment, the Jackson County Circuit Court granted summary judgment for the State, which Tipton appealed. We affirm the circuit court's grant of summary judgment.

## FACTS AND PROCEDURAL HISTORY

¶2. Frank Sanders Tipton, a former employee of a private company that provided probation monitoring services, offered to pay the monthly fine of a female probationer if she would shower in front of him. On November 14, 2007, Tipton was convicted of extortion under Mississippi Code Section 97-11-33 in the Circuit Court of Jackson County, Mississippi. As a result, Tipton was sentenced to serve a term of five years, with one year to be served in the custody of MDOC and two years to be served in the Intensive Supervision Program (ISP), commonly referred to as "house arrest." Upon completion of the ISP, the remainder of his sentence would be suspended and followed by two years of post-release supervision.

¶3. Subsequently, Tipton spent three hundred days in MDOC facilities, with sixty days awarded for his trusty status. Tipton then successfully completed his time with the ISP. During the course of serving his sentence, Tipton prosecuted an appeal. On June 24, 2010, the Court reversed and vacated Tipton's conviction, holding that probation monitoring and ISP-related services do not qualify as "incarceration services" but rather "alternatives to incarceration;" thus Tipton did not violate the extortion statute, Mississippi Code Section 97-11-33, as he was not an "employee of any contractor providing incarceration services." *Tipton v. State*, 41 So. 3d 679, 681-82 (¶ 9) (Miss. 2010); *see* Miss. Code Ann. § 97-11-33 (Rev. 2006).

¶4. Having already served the entirety of his sentence prior to the Court's ruling, Tipton filed a complaint seeking compensation for his wrongful incarceration under Mississippi Code Section 11-44-1. *See* Miss. Code Ann. §§ 11-44-1 to -7 (Rev. 2012). The State agreed that Tipton was entitled to compensation of $41,097 for the three hundred days he was physically housed in state facilities. However, the State rejected Tipton's argument that he should be compensated for the time he spent in the ISP, which would amount to an additional $100,000.

¶5. After a hearing on both parties' motions for summary judgment, the trial court agreed with the State that Tipton was entitled to compensation for his time spent in MDOC custody but not for time spent in the ISP. Thus, the trial court granted the State's motion for summary judgment, which Tipton appeals.

## DISCUSSION

¶6. A circuit court's grant or denial of a motion for summary judgment is reviewed under a *de novo* standard. *Poppenheimer v. Estate of Coyle*, 98 So. 3d 1059, 1062 (¶ 7) (Miss. 2012) (citing *Whitaker v. Limeco Corp.*, 32 So. 3d 429, 433-34 (¶ 10) (Miss. 2010)). Additionally, "when questions of law are raised the applicable standard of review is *de novo*." *Presley v. State*, 48 So. 3d 526, 529 (¶ 10) (Miss. 2010) (quoting *Brown v. State*, 731 So. 2d 595, 598 (¶ 6) (Miss. 1999)).

> **Whether the trial court erred in denying Tipton's compensation claim under the Mississippi Wrongful Conviction and Imprisonment statutes, Mississippi Code Sections 11-44-1 to -7, for the two years he participated in the Intensive Supervision Program.**

3

¶7.     Tipton argues that he should be compensated for the full length of his sentence, including the two years he spent under house arrest in the ISP.  In short, he argues that time served in the ISP should be considered "imprisonment" and "incarceration" as used in the compensation statutes, Mississippi Code Sections 11-44-1 to -7. On the other hand, the State would limit Tipton's compensation to the three hundred days he spent in a "brick and mortar" MDOC facility.   Tipton's argument fails for two reasons: (1) the language of the compensation statutes and (2) the language of the ISP statute.

### 1. The Compensation Statutes – Mississippi Code Sections 11-44-1 to -7

¶8.     "It is not the function of the court to determine and announce what, in its judgment, [a] statute should provide, but to ascertain, if there be ambiguity in its terms, what it does provide."  *Russell v. State*, 231 Miss. 176, 189, 94 So. 2d 916, 921 (1957).  "Whether the statute is ambiguous, or not, the ultimate goal of this Court in interpreting a statute is to discern and give effect to the legislative intent."  *City of Natchez, Miss. v. Sullivan*, 612 So. 2d 1087, 1089 (Miss. 1992) (citing *Anderson v. Lambert*, 494 So. 2d 370, 372 (Miss. 1986)). "If the words of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction."  *Lawson v. Honeywell Int'l, Inc.*, 75 So. 3d 1024, 1027 (¶ 7) (Miss. 2011).  Thus, the first step in analyzing Tipton's compensation claim is to look at the statutes in question and ask whether they are ambiguous.

¶9.     Mississippi Code Sections 11-44-1 to -7 create a statutory scheme designed to compensate "innocent persons who have been wrongly convicted of felony crimes and subsequently *imprisoned*." Miss. Code Ann. § 11-44-1 (Rev. 2012) (emphasis added).  The

Legislature's stated intent for the statute is that "innocent people who are wrongfully convicted . . . receive monetary compensation" . . . "[i]n light of the particular and substantial horror of being *imprisoned* for a crime one did not commit." *Id.* (emphasis added).

¶10.    The elements required to prove a claim for compensation are listed in Mississippi Code Section 11-44-3, which requires that the claimant be convicted of a felony and "subsequently sentenced to a term of *imprisonment*" and released "[o]n grounds not inconsistent with innocence," which includes a vacated judgment, as here. Miss. Code Ann. § 11-44-3 (Rev. 2012) (emphasis added). The remaining elements, including that the accusatory instrument was dismissed, that the claim is not time-barred, that the claimant did not intentionally waive any appellate or post-conviction remedy otherwise available, and that the claim shall be verified by the claimant, all were agreed to by both parties in their Agreed Statement of Uncontested Facts. Miss. Code Ann. § 11-44-3.

¶11.    Mississippi Code Section 11-44-7 details how compensation is to be awarded. Miss. Code. Ann. § 11-44-7 (Rev. 2012). The statute states that, in order to obtain a judgment, a claimant must prove by a preponderance of the evidence that he was "convicted of one or more felonies and subsequently sentenced to a term of *imprisonment*." *Id.* (emphasis added). It then states that if "the court finds that the claimant was wrongfully convicted *and incarcerated,"* the court shall award $50,000 "for each year of *incarceration*." *Id.* (emphasis added).

¶12.    The plain language of the compensation statutes, which use the words "imprisonment" and "incarceration," should be interpreted as allowing compensation only for each year spent in an actual prison. Merriam-Webster defines "imprison" as "to put in . . . prison."

5

*Merriam-Webster Collegiate Dictionary* 584 (10th ed. 1993); *see also Black's Law Dictionary* 757 (6th ed. 1990) (defining "imprison" as "To put in a prison"). Similarly, "incarcerate" is defined as "to put in prison" and comes from the Latin "incarceratus," the past participle of "incarcerare," from "in" plus "carcer," which is Latin for "prison." *Merriam-Webster Collegiate Dictionary* 587 (10th ed. 1993). The plain meaning of these words is that one who is imprisoned or incarcerated is restrained in an actual prison.

### 2. The ISP Statute – Mississippi Code Section 47-5-1003

¶13. The ISP program, better known as "house arrest," was created by Mississippi Code Section 47-5-1003. The statute expressly states that the "intensive supervision program may be used as an *alternative to incarceration* for offenders who are low risk and nonviolent . . . ." Miss. Code Ann. § 47-5-1003 (Rev. 2011) (emphasis added). Such language would appear to preclude Tipton's argument that his time in the ISP qualified as "incarceration" or "imprisonment."

¶14. In fact, the Court construed the ISP as an alternative to incarceration, rather than incarceration in the very case in which Tipton's extortion conviction was vacated. *Tipton v. State*, 41 So. 3d 679 (Miss. 2010). Justice Dickinson, writing for the Court, wrote that "[s]ince the terms 'incarceration' and 'alternative to incarceration' are mutually exclusive, we reverse and vacate the conviction." *Id.* at 680 (¶ 1). Tipton was an employee of a private company that provided probation monitoring and ISP-related services when he was convicted of violating Mississippi Code Section 97-11-33 for offering to pay a probationer's monthly fine if she would shower in front of him. *Id.* at 680 (¶¶ 2-3). Tipton's conviction was vacated because he was not an "employee of any contractor providing incarceration services"

as defined in Mississippi Code Section 97-11-33. *Id.* at 680 (¶¶ 2-3). The Court found that Tipton worked for a company that provided an alternative to incarceration services, so he could not have violated the statute in question. *Id.* at 682 (¶ 13).

¶15. While *Tipton v. State* is strong authority for the ISP not to be considered incarceration, there is precedent inconsistent with such a finding. *See Lewis v. State*, 761 So. 2d 922 (Miss. Ct. App. 2010); *Brown v. Miss. Dep't of Corr.*, 906 So. 2d 833 (Miss. Ct. App. 2004), *overruled on other grounds by Johnson v. State*, 77 So. 3d 1152, 1155 (¶ 10) (Miss. Ct. App. 2012); *Ivory v. State*, 403 So. 2d 1284 (Miss. 1981). In *Lewis*, Lewis argued that house arrest was a form of probationary release from which he could not be removed without a preliminary hearing identical to a parole or probation revocation proceeding. *Lewis*, 761 So. 2d at 923 (¶ 2). The State argued that an inmate in the ISP remains a prisoner; "[t]herefore, . . . removing a prisoner from the [ISP] and returning him to the general prison population is nothing more than an internal reclassification matter for which the inmate enjoys no liberty interest that would trigger the need for the kind of due process hearing necessary to revoke probation or parole." *Id.* at 923 (¶ 3). The Court of Appeals ultimately agreed with the State. *Id.* at 923 (¶ 5). However, *Lewis* is distinguished from the instant case in that *Lewis* dealt with due process rights, while the instant case revolves around the compensation statutes and their application. Further, the *Lewis* court held that being placed in the ISP is not the equivalent of being placed on parole, rather than equating the ISP with incarceration, as Tipton argues.

¶16. Additionally, in *Brown v. Mississippi Department of Corrections*, the Court of Appeals stated, "[w]hether participating in the ISP or confined in a correctional facility,

Brown was confined as a prisoner under the jurisdiction of the MDOC. Therefore, Brown is entitled to receive credit for the time spent in the intensive supervision program." **Brown**, 906 So. 2d at 836 (¶ 11) (citations omitted). **Brown** is distinguished from the instant case because **Brown** dealt with the treatment of time served in the ISP for the purpose of MDOC sentencing calculations instead of the purpose of wrongful-conviction compensation as controlled by Sections 11-44-1 to -7.

¶17.     Finally, in **Ivory v. State**, the Court considered a claim by a prisoner removed from the Supervised Earned Release ("SER") program[1] in which he argued he was entitled to credit for the time spent in that program outside an actual prison. **Ivory**, 403 So. 2d at 1285. The Court contrasted the SER statute with the parole statutes, writing:

> In the absence of the clear statement of legislative intent, apparent in [Mississippi Code Section] 47-7-27 that a parole violator is not entitled to have his sentence diminished for the time he was on parole, we would be compelled to hold such time should be taken into account as credit on the appellant's sentence. There being no similar penalty in the SER program, we cannot hold that Ivory, as a matter of law, must be denied credit on his sentence because he was terminated or apprehended for violation of his SER agreement.

**Id.** at 1286. Like **Brown**, **Ivory** is distinguished from the instant case because it deals with credit as to the offender's sentence rather than credit given under the compensation statutes. Additionally, **Ivory** was not in the context of the ISP but its predecessor program, so its value as precedent in the instant case is limited.

---

[1]The SER program was established by Mississippi Code Section 47-5-171, repealed in 1982. Like the ISP, the SER program allowed for certain offenders to be placed on a form of house arrest in lieu of serving time in a prison.

¶18.　Tipton should not be compensated under the compensation statute for time spent in the ISP. In ***Tipton v. State***, the Court expressly held that "the terms 'incarceration' and 'alternative to incarceration' are mutually exclusive." ***Tipton***, 41 So. 3d at 680 (¶ 1). Thus, the ISP program, which the statute declares to be "an alternative to incarceration," cannot be construed as being the equivalent of incarceration. Miss. Code Ann. § 47-5-1003 (Rev. 2011). Accordingly, the compensation statutes are not applicable to the time Tipton spent in the ISP, as the compensation statutes compensate for "each year of incarceration." Miss. Code Ann. § 11-44-7 (Rev. 2012).

## CONCLUSION

¶19.　The circuit court was correct in granting the State's motion for summary judgment denying Tipton compensation for his time in the ISP. The compensation statutes allow for compensation for each year of "imprisonment" or "incarceration," which plainly means time spent in an actual prison. *See* Miss. Code Ann. § 11-44-1 to -7 (Rev. 2012). Taken in concert with the ISP statute, which defines the program as an "alternative to incarceration," it is clear that Tipton is not entitled to compensation for time served in the ISP. *See* Miss. Code Ann. § 47-5-1003 (Rev. 2011). Accordingly, the Court affirms the judgment of the Jackson County Circuit Court.

¶20.　**AFFIRMED.**

**DICKINSON AND RANDOLPH, P.JJ., LAMAR AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND CHANDLER, J. KING, J., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, DISSENTING:**

9

¶21. Frank Tipton was convicted of a crime he did not commit. He spent 300 days in prison. For the next two years, he was under house arrest in Mississippi's Intensive Supervision Program (ISP). For two years, he could not change his place of residence without correctional officer approval; his home was subject to inspection and search without warning or warrant; he was required to submit to random drug and alcohol tests at the request of his correctional officer; and he was required to remain at his home except to go to work or perform community service unless he was given explicit permission to do otherwise. The State contends, and the majority agrees, that he is due no compensation for the two years in which his rights to due process, liberty, and protection against unreasonable search and seizure were wrongfully denied him. The majority finds that while Tipton was not in a "brick and mortar" prison facility, he cannot be said to have been "imprisoned." I respectfully dissent.

¶22. The majority reaches its result, at least partially, by finding that the plain language of the terms "imprisonment" and "incarceration," as used in the compensation statutes,[2] refer only to detention inside an actual prison, and do not include house arrest. The definitions quoted by the majority are somewhat incomplete. The full definitions reveal that the meanings of "imprisonment" and "incarceration" are not as simplistic as one's being confined inside a "brick and mortar" prison. Webster's dictionary defines "imprison" as "to confine in *or as if in* prison." *Webster Random House Dictionary* 963 (2001) (emphasis added). Merriam-Webster defines "incarcerate" as "to imprison; confine." *Webster Random House Dictionary* 965 (2001). Can it be credibly argued that Tipton was not subjected to

---

[2]Miss. Code Ann. §§ 11-44-1 to -7 (Rev. 2012).

confinement while under house arrest in the ISP? Black's Law Dictionary defines "imprisonment" as "[t]he act of confining a person, esp. in a prison," or "[t]he state of being confined; a period of confinement." *Black's Law Dictionary* 825 (9th ed. 2009). House arrest unarguably is a restraint upon the liberty of an individual. It entails confinement and restriction to which a "free world" American is not subjected. Tipton's liberty was restrained in multiple ways, including his being required to remain either at home or at work. I conclude that Tipton was imprisoned for the purposes of wrongful conviction compensation when he was placed under house arrest.[3]

¶23.    The majority also looks to case law to determine whether Tipton was incarcerated for the purpose of the compensation statutes. In reaching its conclusion, the majority relies, at least in part, on the very case which exonerated Tipton, *Tipton v. State*, 41 So. 3d 679 (Miss. 2010). There, this Court found that Tipton, as an employee of a private company that provided probation monitoring and house-arrest services, could not be criminally convicted of extortion under Mississippi Code Section 97-11-33 because he was not an "employee of any contractor providing incarceration services," but instead was employed by a company that provided alternatives to incarceration. *Id.* at 682 (¶ 13). The majority reasons that the finding in *Tipton* that house arrest is an alternative to incarceration supports its holding that a person who is under house arrest is not incarcerated.

---

[3]The word "arrest" clearly entails confinement. Arrest is "actual or constructive seizure or detention of the person arrested, or his voluntary submission to custody, and the restraint must be under real or pretended legal authority." *Bearden v. State*, 662 So. 2d 620, 623 (Miss. 1995) (quoting 5 Am. Jur. 2d *Arrest* § 1 (1962)).

¶24. The problem with the majority's reliance on *Tipton* is that the criminal appeal presented an entirely different question to this Court than the one now before us. In the extortion case, this Court determined that an employee of a company that described itself as a provider of alternatives to incarceration could not be criminally prosecuted for extortion under a statute which prohibited certain conduct only if done by employees of companies which provided incarceration services. *Tipton*, 41 So. 3d at 682 (¶ 13). At no point in that opinion did this Court analyze the status of a person enrolled in a *house-arrest* program and whether that status was sufficiently equivalent to "imprisonment" to render such a person eligible for compensation if he or she were found to have been wrongfully convicted.

¶25. Obviously, the 2010 *Tipton v. State* was a criminal case. The language of the relevant extortion statute was reviewed under the "bedrock law in Mississippi that criminal statutes are to be *strictly* construed against the State and *liberally* in favor of the accused." *Id.* at 682 (¶ 11) (quoting *Coleman v. State*, 947 So. 2d 878, 881 (Miss. 2006)). Unlike the majority, I do not find that *Tipton v. State* presents strong authority for house arrest to be considered uncompensable under our *civil* wrongful-conviction-compensation statutes. Instead, I conclude that, for the specific question now presented to this Court, the precedent of the line of cases which actually address the custodial status of persons in the ISP should lead this Court to find that Tipton should be compensated for his time wrongfully served under house arrest. *See Ivory v. State*, 999 So. 2d 420, 426 (¶ 15) (Miss. Ct. App. 2008); *Brown v. Miss. Dep't of Corr.*, 906 So. 2d 833 (Miss. Ct. App. 2004), *overruled on other grounds by Johnson v. State*, 77 So. 3d 1152, 1155 (¶ 10) (Miss. Ct. App. 2012); *Lewis v. State*, 761 So. 2d 922 (Miss. Ct. App. 2000).

¶26. An inmate in the ISP is "confined *as a prisoner* under the jurisdiction of the Mississippi Department of Corrections *in the normally-understood sense of that term. . . ."* *Lewis*, 761 So. 2d at 923 (¶ 5) (emphasis added). "In other words, an offender in the ISP is an inmate in the custody of the MDOC who is serving time on house arrest instead of being housed in a MDOC facility." *Ivory*, 999 So. 2d at 426 (¶ 15). *Lewis* and *Ivory* are, in my view, solidly on point with the question presented to us and, unless overruled by a majority of this Court, should control today's decision. As far as the State is concerned, inmates in the ISP are *prisoners* under the "complete jurisdiction of the [MDOC],"[4] and their status for the purposes of administrative remedies and punishment is the same as that of any other prisoner in a "brick and mortar" facility. This is a line of reasoning the State has pursued consistently when fighting challenges to reclassification from ISP to an MDOC facility brought by aggrieved inmates, and the State has argued that position successfully. In *Lewis*, the State argued that "removing a prisoner from the house arrest program and returning him to the general prison population is nothing more than an internal reclassification matter for which the inmate enjoys *no liberty interest* that would trigger the need for the kind of due process hearing necessary to revoke probation or parole." *Lewis*, 761 So. 2d at 923 (¶ 3) (emphasis added). The Court of Appeals agreed. *Id.* (¶ 4); *see also Brown v. Miss. Dep't of Corr.*, 906 So. 2d 833, 835 (¶ 6) (Miss. Ct. App. 2004), *overruled on other grounds by Johnson v. State*, 77 So. 3d 1152, 1155 (¶ 10) (Miss. Ct. App. 2012). Because *no liberty interest* is involved when an inmate is removed from house arrest and placed in an MDOC facility, and an inmate

---

[4]Miss. Code Ann. § 47-5-1003(3) (Rev. 2011).

in the ISP is a prisoner "in the normally understood sense of that term,"[5] I find that Tipton, being a prisoner, was "imprisoned" in the ISP in the same way that he would have been at an MDOC facility, and that he should be compensated for that imprisonment because he was put there wrongfully.

¶27. The State consistently has argued that prisoners in the ISP receive inmate classifications the same as all other prisoners in the MDOC. If Tipton's ISP status had been revoked, and if he had challenged his lack of a hearing, the State would have contended, as it did in *Lewis* and *Brown*, that he was an inmate under the jurisdiction of the MDOC and his removal was merely an administrative reclassification that involved no liberty interest. If the State sees no significant reduction in liberty when an inmate is moved from house arrest to prison, how can it credibly argue that the limited freedoms an individual is granted under house arrest are so superior to being in a prison as to be uncompensable if he or she was wrongly convicted and wrongly punished? Incarceration is a matter of degrees, or levels, i.e., maximum versus minimum security, or trusty status granting special privileges to some prisoners given assignments inside and outside of prison walls. The MDOC treats house arrest as just another tier in its system of custodial hierarchy.

¶28. Frank Tipton may not be seen as a sympathetic plaintiff. Many will lament his having "gotten off" on a technicality. However, the day will come when a factually innocent person will serve time in the ISP and suffer the ignominy and harsh restrictions on liberty that such a sentence entails. Such a person's ability to be compensated should not be foreclosed or

---

[5] *Lewis*, 761 So. 2d at 923 (¶ 5).

14

compromised because of widespread revulsion at the disgusting conduct attributed to Tipton during his extortion trial. The State consistently has argued that prisoners in the ISP are, for all intents and purposes, prisoners with the same liberty interests as those in actual prisons. House arrest required Tipton to submit completely to the MDOC, giving the State access to his home and his body, and to forego several significant constitutional rights enjoyed by free Americans. Because I would find that wrongful incarceration under the ISP is compensable under our compensation statutes, I respectfully dissent.

**WALLER, C.J., AND CHANDLER, J., JOIN THIS OPINION.**