COLEMAN, Justice,
dissenting:
¶ 16. I would hold that Mississippi Code Sections 11-44-1 to -7 do not entitle Tipton to compensation for being placed in the Intensive Supervision Program, commonly known as house arrest. I am of the opinion that, as a matter of law, house arrest does not equate to incarceration, and incarceration is one necessary requirement for receiving compensation. Therefore, with respect, I dissent.
¶ 17. “It is not the function of the court to determine and announce what, in its judgment, [a] statute should provide, but to ascertain, if there be ambiguity in its terms, what it does provide.” Russell v. State, 231 Miss. 176, 94 So.2d 916, 921 (1957). “Whether the statute is ambiguous, or not, the ultimate goal of this Court in interpreting a statute is to discern and give effect to the legislative intent” City of Natchez, Miss. v. Sullivan, 612 So.2d 1087, 1089 (Miss.1992) (citing Anderson v. Lambert, 494 So.2d 370, 372 (Miss.1986)) (emphasis added). The majority states that the purpose of compensation statutes is to compensate innocent persons who have been uniquely victimized. The majority’s statement stops short. The purpose of the compensation statute is to compensate those who “have been uniquely victimized, [who] have distinct problems reentering society.” Miss.Code Ann. § 11-44-1 (Rev. 2012) (emphasis added). Mississippi Code Sections 11^14-1 to -7 create a statutory scheme designed to compensate “innocent persons who have been wrongly convicted of felony crimes and subsequently imprisoned.” Miss. Code Ann. § 11-44-1 (Rev. 2012) (emphasis added). According to Section 11^14-1, compensation addresses “the substantial horror of being imprisoned for a crime one did not commit.” Id. (emphasis added). In my opinion, the clear intent is to compensate those who have been victimized by being unable to have regular contact with the free world by being imprisoned.[8]
¶ 18. “If the words of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction.” Lawson v. Honeywell Int’l, Inc., 75 So.3d 1024, 1027 (¶ 7) (Miss.2011). In order to be eligible for compensation, the Legislature states that the claimant must be “sentenced to a term of imprison *88 ment,” and the claimant must be “wrongfully convicted and incarcerated.” Miss. Code Ann. § 11 — 44-7 (Rev. 2012) (emphasis added). Although I am in agreement with the majority that house arrest is a form of confinement, Mississippi legislation and case law have made it clear that there are different levels of confinement, and compensation was meant for offenders, as the plain language of the statute states, who were incarcerated or, alternatively, imprisoned. With respect to the majority, I cannot read the statute to provide compensation for any lesser form of confinement.
¶ 19. Mississippi Code Section 47-5-1003 defines the “intensive supervision program” as “an alternative to incarceration.” Miss.Code Ann. § 47-5-1003 (Supp.2014) (emphasis added). The Mississippi Legislature defined house arrest as “confinement of a person ... to his place of residence....” Miss.Code Ann. § 47-5-1001 (Supp.2014). Under house arrest, the Legislature has allowed for “approved absences from the home” which include but are not limited to absence for employment, seeking employment, medical treatment, schooling, community service related work, and for other compelling reasons. Miss. Code Ann. § 47-5-1005 (Supp.2014).
¶ 20. The majority relies on Lewis v. State, 761 So.2d 922 (Miss.Ct.App.2000), a Court of Appeals case that held that house arrest-is a form of confinement; therefore, moving an offender from house arrest to the “general prison population” is a “reclassification” that does not require a hearing. Id. at 923; see also Johnson v. State, 77 So.3d 1152, 1154 (Miss.Ct.App.2012); Brown v. Miss. Dep’t of Corr., 906 So.2d 833, 835 (Miss.Ct.App.2004), overruled on other grounds by Johnson, 77 So.3d at 1154. The majority is correct. House arrest is one form of confinement, but it is not the only form, the most severe form, or the form that the Legislature seeks to address with the compensation statutes.
¶ 21. We are not bound by decisions of the Court of Appeals, Stewart v. Stewart, 864 So.2d 934, 937 (Miss.2003), but I nevertheless address Lewis because I perceive flaws in the majority’s application of it to the case before us today. The Lewis Court considered the issue of whether an offender moved from house arrest to the general prison population should enjoy the due process rights afforded when one’s “probation, parole or conditional release has been unlawfully revoked.” Lewis, 761 So.2d at 923 (citing Miss.Code Ann. § 99-39-5(l)(g) (Supp.1999)). The court determined that, since the offender “would remain under a form of confinement” under the jurisdiction of the Mississippi Department of Corrections, the post-conviction relief provisions of Section 99-39-5(l)(g) were not available to the claimant. Lewis, 761 So.2d at 923. The Lewis Court based its holding on the Legislature’s wording in Section 47-5-1003, where the statute states:
(3) To protect and to ensure the safety of the state’s citizens, any offender who violates an order or condition of the intensive supervision program may be arrested by the correctional field officer and placed in the actual custody of the Department of Corrections. Such offender is under the full and complete jurisdiction of the department and subject to removal from the program by the classification hearing officer.
Miss.Code Ann. § 47-5-1003 (emphasis added); see Lewis, 761 So.2d at 923. Lewis cites the above quoted statute for the point that the offender remains under Department of Corrections jurisdiction; therefore, the offender is still confined and not released or able to claim post conviction relief. In other words, the court determined that “reclassification” of an of *89 fender within the jurisdiction of the Department to a different form of confinement did not constitute probation, parole, or conditional release.
¶ 22. Even were we bound to follow it, the Lewis Court’s holding makes it clear that there are different “classes” of confinement. The court tells us Lewis was reclassified; in order to reclassify an offender, there must be different classes of confinement. Moreover, the court stated multiple times house arrest is a “form of confinement.” Thus, there are different forms, or in the alternative, different classes of confinement. It follows that house arrest is one form of confinement and incarceration is another form of confinement. Because the compensation statute by its terms applies only to the most restrictive of the forms of confinement, imprisonment, the Lewis Court’s exploration of the meaning of confinement for reclassification purposes, even if it were binding precedent, has no application to the case sub judice.
¶ 23. The Legislature states that removal from house arrest requires the offender to be “arrested by the correctional field officer and placed in the actual custody of the Department of Corrections.” Miss.Code Ann. § 47-5-1003 (Rev. 2011). Therefore, under the plain meaning of the statute, the offender becomes more confined when moved to prison, so much so, that the offender must be “arrested” and “placed in the actual custody” of the Department. In other words, the offender is “reclassified” to a more intensive “form of confinement” or a higher level of confinement. See Lewis, 761 So.2d at 923. Therefore, following the reasoning of Lewis, Lewis was never released and was never able to claim relief under post conviction relief. He remained confined, but undeniably, Lewis became more confined, or in other words, incarcerated when moved from house arrest to prison.
¶ 24. Comparing the instant case to Lewis further highlights the distinguishing factors between the cases. Tipton compares house arrest with incarceration, arguing that house arrest is an alternative form of incarceration; essentially, he argues they are basically one and the same. Lewis provides little, if any, support for Tipton’s argument. Lewis stops short of defining house arrest as incarceration. Outside of echoing the Legislature that house arrest is a form of confinement, Lewis simply does not compare house arrest to incarceration, nor use the term incarceration to define house arrest, as doing so would be outside the issues presented. The court was asked to compare house arrest with parole, probation, or conditional release for purposes of Department of Corrections classifications, and the court concluded that house arrest was not parole, probation, or conditional release because Lewis was under Department jurisdiction.
¶ 25. Ironically, in his criminal appeal, Tipton — with success — utilized the above-described reasoning regarding the meaning of incarceration. Tipton v. State, 41 So.3d 679, 680 (Miss.2010). The majority distinguishes Tipton’s criminal appeal by stating “Tipton’s criminal appeal confronted an entirely different issue than the civil suit now before us.” (Maj.Op.A 12) In Tip-ton’s criminal appeal, the Court agreed with Tipton that “house arrest and incarceration services cannot be synonymous because Mississippi Code Section 47-5-1003(1) defines intensive supervision, commonly known as house arrest, as a program that may be used as an alternative to incarceration.” Tipton, 41 So.3d at 682. In other words, the intensive supervision program or house arrest, although a form of confinement, is not similar enough to *90 incarceration in prison for the program to qualify as an “incarceration service.” Without question, Tipton takes a position directly opposing the position he successfully advanced in his criminal appeal. I find it disturbing, to put it mildly, that the Court allows him to succeed.
¶ 26. The Court has defined the doctrine of judicial estoppel, stating that it “precludes a party from asserting a position, benefitting from that position, and then, when it becomes more convenient or profitable, retreating from that position later in the litigation.” Clark v. Neese, 131 So.3d 556, 560 (Miss.2013), reh’g denied (Feb. 20, 2014) (internal citations omitted). The goal of the doctrine is “to protect the judicial system and applies where intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.” Id. The three-part test for judicial estoppel states that it applies if: “(1) the position is inconsistent with one previously taken during litigation, (2) a court accepted the previous position, and (3) the party did not inadvertently take the inconsistent positions.” Id. (citing Kirk v. Pope, 973 So.2d 981, 991 (Miss.2007)).
¶ 27. Given that the Court has stated judicial estoppel applies generally to a suit and given that the goal of judicial estoppel is “to protect .the judicial system and applies where intentional self-contradiction is being used as a means of obtaining unfair advantage,” I would hold that in the instant case, judicial estoppel applies. Clark, 131 So.3d at 560. Tipton should be barred from making a self-contradicting argument where, in his criminal appeal, the argument reversed his conviction, and here, under the majority’s reasoning, the contradicting argument would give him compensation for the time he spent under house arrest while he was appealing the very same criminal conviction.
¶ 28. Under close review of Lewis, the statutes at issue, and the doctrine of judicial estoppel, I would hold that Tipton is not entitled to relief under Sections 11-44-1 to -7, or alternatively, that Tipton is barred by judicial estoppel from making a self-contradicting argument that the Court accepted once to his great benefit.
RANDOLPH, P.J., LAMAR AND PIERCE, JJ., JOIN THIS OPINION.

. Because the question before us centers squarely on statutory law, I respectfully disagree that the common-law tort of false imprisonment provides any relevant guidance.